J. C. DELLINGER v. J. A. CLARK and WIFE, IVA CLARK.

(Filed 7 November, 1951.)

**1. Judgments § 20a—**

After term, the presiding judge may not vacate a judgment entered during the term or substitute another therefor except in conformity with a proper proceeding brought for that purpose.

**2. Judgments § 19—**

Judgment may not be rendered out of the county except upon statutory authority or by consent of the parties appearing upon the face of the record.

**3. Appeal and Error § 22—**

The record on appeal imports verity, and the Supreme Court is bound by what it contains.

**4. Judgments § 19—Jurisdiction to render judgment out of term and district is coextensive with consent of parties.**

The court dictated his findings and judgment to the court stenographer, including the taxing of costs. Upon objection as to this phase, the court requested briefs on the matter of costs, and it was agreed that the stenographer should mail her transcript to the judge for signature, and it appeared of record that the parties agreed that the judge might enter judgment out of term and out of the district. *Held:* The consent of the parties was without limitation, and therefore the trial judge had jurisdiction to correct a finding and render a different judgment upon his conclusion that the judgment dictated to the reporter was erroneous, and the contention that he had jurisdiction to determine only the matter of costs out of the district and out of term is untenable, the presumption being in favor of jurisdiction, with the burden on the party asserting the contrary to show want of jurisdiction.

**5. Judgments § 20a—**

Where the judge dictates his findings of fact and judgment during term time, and it is agreed the stenographer should mail her transcript to him

under consent of the parties that he might render judgment out of term and out of the district, the matter is *in fieri* until final rendition of the judgment, and the judge has the power to alter his findings as contained in the transcript and to correct the judgment for error of law.

ERVIN, J., took no part in the consideration or decision of this case.

APPEAL by defendants from *Gwyn, J.,* at June Term, 1951, of BURKE.

Civil action for trespass, which, on answer filed, resolved itself into an action in ejectment to try title to land, involving issues of (1) the location of a disputed boundary line and (2) adverse possession.

The parties, by oral consent entered in the minutes as provided by G.S. 1-184, waived a jury trial and agreed that the court might hear the evidence, find the facts, and render judgment.

The case was the last one tried during the term, and the parties stipulated "that the Court might sign the Findings of Fact and Judgment . . . out of Term . . ." Nevertheless, the trial judge, before leaving the bench, announced his intention of finding and adjudging that the defendants had acquired by adverse possession two small corners of the land in controversy, and that the rest was owned by the plaintiff. It appears, however, that the judge later, and before signing the findings of fact and judgment, concluded that his original impression as to the validity of the defendants' claim of title by adverse possession was erroneous (in failing, *inter alia,* to take into consideration the rule that one adverse possession may not be tacked to another to make out title by prescription under color of title when the deed under which the last occupant claims title does not include the land in dispute. *Jennings v. White,* 139 N.C. 23, 51 S.E. 799). At any rate, by the findings and judgment as later signed by Judge Gwyn at Reidsville, it is found and adjudged that the plaintiff is the owner of all the land in controversy. The defendants, by this appeal, challenge the action of the court in signing, out of the county and out of the district, findings and judgment at variance with the court's intended decision as announced at the end of the trial. The single question raised by the appeal is whether the court had jurisdiction to enter such findings and judgment after expiration of the term at which the case was tried.

The case on appeal as settled by the court below discloses in substance these controlling factual recitals:

1. That at the conclusion of the trial and after the taking of evidence, including documentary proofs of title and the testimony of some ten witnesses, "arguments by counsel were addressed to the court, lasting approximately two hours or longer and relating to various disputed matters, among which was the taxing of costs."

2. "At various times during the arguments comments were evoked by the court. At one stage . . . the court remarked in substance that it was

half a mind to convene a special venire for the following Monday, and return to Morganton, impanel a jury and start the trial anew, striking out the agreement of the parties waiving jury trial . . ., to which remark counsel for the plaintiff kept silent, and counsel for defendant said, in effect, 'Oh, no, your Honor, don't do that,' and further and in the same exchange between counsel and court, counsel for the defendant suggested that the court take the case out of the district . . . and render verdict and judgment."

3. "In response to this suggestion from counsel for defendant, counsel for plaintiff expressed acquiescence, and the court thereupon dictated such an order to the stenographer . . . in words as follows: 'It is agreed that the Court might sign the Findings of Fact and Judgment out of the County, and out of Term, and mail same back.' "

4. "During the last several hours of the trial, the court dictated to the stenographer several proposed findings relating to more than one matter. At one stage of the proceedings the Court began the dictation of a portion of a proposed judgment in words taxing the defendants with all costs, although in the same proposed judgment allowing the defendants a small portion of the land by adverse possession. Upon urgent objection by counsel for the defendants, the Court reconsidered what it had already announced with respect to costs, and announced that it desired of both counsels briefs submitted upon the matter."

5. Before leaving Morganton on 21 June, the court "indicated that its judgment would be adverse to the plaintiff as to two corners of the land in controversy," and went back upon the land and pointed out to the surveyor these two areas, and "said areas . . . were actually surveyed and marked in the presence of the court." Thereupon, "the plaintiff gave notice to the Court of his intention to appeal from the proposed Findings of Fact and proposed Judgment to the extent, and in case, said Judgment may be favorable to the defendants. Whereupon, the Court, at Morganton on 21 June, dictated and signed" regular form entries of appeal to the Supreme Court for the plaintiff.

6. "As a result of extensive argument of the counsel and colloquy between counsel and Court, . . . a proposed draft of findings of fact and judgment as dictated by the Court was transcribed by the stenographer from her notes and pursuant to agreement by counsel . . . was sent by the stenographer to" Judge Gwyn at Reidsville, N. C., and later "counsel for the plaintiff sent the Court at Reidsville a brief appertaining to the question of cost, and also cited to the Court an authority with respect to the question of adverse possession."

The "proposed draft of findings and judgment" (transcribed by the stenographer and sent to the Judge) for the sake of brevity is omitted herefrom. However, it contains in substance these findings: (1) "that

the record title in the plaintiff is paramount . . . to the record title of the defendant"; (2) that no part of the land in controversy is "embraced in the defendants' deed"; but that (3) "a part of the land in controversy has been possessed by the defendant(s) and those under whom he claims adversely, . . . and as of right for a period of more than 20 years prior to the institution of this suit, and by virtue of such actual possession the defendant is now the owner thereof."

7. "Whereupon, at Reidsville, N. C., out of the district, in accordance with agreement of the counsel, the Court, considering the matter *in fieri*, signed and executed the Findings of Fact, striking from the stenographic draft certain portions," the portions so struck out being those indicating that the defendants have been in adverse possession of, and have thereby acquired title to, parts of the land in controversy.

8. This further recital appears in the statement of case on appeal, as settled by the court below: "The Court, upon further consideration, at Reidsville, concluded that the Court was in error in applying the principles of law relative to adverse possession. The Court considered that although it had announced what it intended as its Judgment, that final Judgment was not rendered until the Judgment was signed, and that it remained *in fieri*. By agreement of the parties, the question of costs was to be briefed and determined by the Court and the Judgment was to be signed out of the District. Thereupon, the Court signed the Judgment as appears of record, together with the findings of fact, as modified."

9. "At the same time that the Court signed . . . the foregoing findings of fact . . ., and at the same place, Reidsville, N. C., and pursuant to agreement of counsel, the Court signed and executed" two judgments thereon. These judgments, for the sake of brevity, are not copied herein. In substance they embrace the following:

The first judgment adjudicates "that the Findings of Fact heretofore made in this case be modified as follows: the findings that the defendants are owners of two small irregular parts of the lands in controversy are stricken"; (2) "that the defendants are not the owners of any portion of the lands in controversy"; (3) as to adverse possession, "that the possession of the defendants (a) was not sufficiently hostile and exclusive as to meet legal requirements"; or (b) if sufficiently hostile and exclusive, "the duration of such possession is not satisfactorily disclosed."

The second judgment refers to the findings of fact and adjudicates that the plaintiff is the owner and entitled to the possession of all of the land in controversy, describing it, and taxes the defendants with the costs.

To the findings of fact filed and the judgments entered by the court below, the defendants excepted and appealed, assigning errors.

*Mull, Patton & Craven for plaintiff, appellee.*
*Horton & Carter and Russell Berry for defendants, appellants.*

JOHNSON, J.   It is settled law in this jurisdiction that after a term of Superior Court has ended, the presiding judge may not vacate a judgment entered during the term, or substitute another therefor, except in conformity with a proper proceeding brought for that purpose. *Bisanar v. Suttlemyre,* 193 N.C. 711, 138 S.E. 1; *Dunn v. Taylor,* 187 N.C. 385, 121 S.E. 659; *Ramsour v. Raper,* 29 N.C. 346.   Nor may a judge of the Superior Court render judgment outside of the county in which the action is pending, unless authorized to do so by statute, or by consent of the parties. *Patterson v. Patterson,* 230 N.C. 481, 53 S.E. 2d 658; *Gaster v. Thomas,* 188 N.C. 346, 124 S.E. 609; *Brown v. Mitchell,* 207 N.C. 132, 176 S.E. 258.   And where consent is relied upon as authority to sustain a judgment entered outside of the county, the facts in respect to the consent must appear on the face of the record. *Jeffreys v. Jeffreys,* 213 N.C. 531, 197 S.E. 8.

Here, it is conceded that the trial judge had no statutory authority to render judgment out of the county.   But it does appear on the record that it was stipulated and agreed "that the Court might sign the Findings of Fact and Judgment out of the County, and out of Term, and mail same back."   Where this appears, the judge's authority to enter judgment is coextensive with the consent conferred. *Gaster v. Thomas, supra* (188 N.C. 346); *Pate v. Pate,* 201 N.C. 402, 160 S.E. 450).

The defendants contend that the foregoing stipulation is insufficient to support the findings and judgment entered by the court.   They point to these facts disclosed by the record: (1) that the judge before leaving the bench announced his intention to render judgment finding and adjudicating that the defendants had acquired by adverse possession two corners of the land in controversy, with the rest being owned by the plaintiff; (2) that the judge went with the parties and their attorneys upon the land and pointed out to the surveyor these two areas and had them actually surveyed out and marked in the court's presence; (3) that on returning to the courtroom the judge then dictated to the court stenographer his intended findings of fact and judgment in accordance with his previous announcement, with direction that the stenographer mail transcript of the dictation to him at Reidsville; (4) in concluding the dictation, the judge indicated that the defendants would be taxed with the costs; (5) that on objection by counsel for the defendants, the judge reconsidered his announcement as to costs, and requested counsel on both sides to submit briefs upon the question of costs; (6) that the plaintiff gave notice of his intention to appeal to the Supreme Court, and the judge dictated into the record his appeal entries.

DELLINGER *v.* CLARK.

The defendants urge that these facts appearing of record, it follows as a matter of law therefrom that the judge rendered judgment on all issuable matters before the term of court expired; that therefore nothing remained *in fieri* except the matter of costs. Thus, the defendants reason that when the judge left the bench, his authority over the case was expended, except as to taxing the costs and performing the ministerial act of signing the findings of fact and judgment as previously dictated to the court stenographer. (*Brown v. Harding,* 170 N.C. 253, p. 261, 86 S.E. 1010; *Belcher v. Cobb,* 169 N.C. 689, 86 S.E. 600). Accordingly, the defendants insist that the judgment later signed by the judge, in Reidsville, substantially modifying his previously announced findings and decision, is a nullity for want of jurisdiction.

But the stipulation authorizing the court to sign the findings of fact and judgment out of term and out of the county goes beyond the limits conceded by the defendants. The stipulation does not limit the court to any specific decision, announced or unannounced; nor does it relate to any specific phase or phases of the case. In fact, the record indicates that the stipulation was dictated into the record by the presiding judge after counsel for the defendants had suggested without qualification "that the Court take the case out of the District and render judgment and verdict."

The record on appeal imports verity, and this Court is bound by what it contains. *Southerland v. Crump,* 199 N.C. 111, 153 S.E. 845; *Tomlinson v. Cranor,* 209 N.C. 688, 184 S.E. 554.

The court below had the power to consider and inquire into the facts in respect to, and determine, subject to review, the question of its jurisdiction. *Jones v. Oil Co.,* 202 N.C. 328, 162 S.E. 741; 21 C.J.S., Courts, Sec. 113. And the court having acted in the matter, every presumption not inconsistent with the record will be indulged in favor of jurisdiction. *McKellar v. McKay,* 156 N.C. 283, 72 S.E. 375; 21 C.J.S., Courts, Sec. 96. See also *Henderson County v. Johnson,* 230 N.C. 723, 55 S.E. 2d 502; *Williamson v. Spivey,* 224 N.C. 311, 30 S.E. 2d 46; *Graham v. Floyd,* 214 N.C. 77, 197 S.E. 873. The burden is on the party asserting want of jurisdiction to show such want. 21 C.J.S., Courts, Sec. 96, p. 149.

It appears that the trial court interpreted the stipulation as holding *in fieri* the decision *in toto* until the final findings and judgment should be signed. Upon this record the contrary has not been made to appear. Therefore, the trial and judgment below will be upheld.

No error.

ERVIN, J., took no part in the consideration or decision of this case.